FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 OCT 16 PM 3:49
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| BOBBY MINOR, | ) | |
| Plaintiff, | ) | |
| v. | ) | CV 111-070 |
| DENNIS BROWN, et al., | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Georgia Diagnostic and Classification Prison ("GDCP") in Jackson, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983.[1] Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is presently before the Court on Defendant Young's "Motion to Dismiss Plaintiff's Amended Complaint," and Defendants Brown and Mayo's "Motion to Dismiss Plaintiff's Complaint." (Doc. nos. 37, 40.) Plaintiff opposes both motions. (Doc. nos. 48, 51.) In addition, Defendants Brown and Mayo filed a reply (doc. no. 58), Defendant Young filed a reply (doc. no. 59), and Plaintiff filed a sur-reply (doc. no. 62). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motions to dismiss (doc. nos. 37, 40) be **GRANTED** and that this case be **DISMISSED** without prejudice and **CLOSED**.

---

[1] Although he is currently confined at GDCP, Plaintiff's complaint concerns events that allegedly occurred at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia. (See doc. no. 19.)

## I. BACKGROUND

Because Plaintiff is proceeding IFP, the Court screened his original complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A. In a Report and Recommendation ("R&R") dated November 18, 2011, the Court found that Plaintiff's complaint failed to state a claim upon which relief could be granted and recommended that the complaint be dismissed. (Doc. no. 13.) Following issuance of the R&R, Plaintiff filed a motion for leave to file an amended complaint on December 5, 2011. (Doc. no. 16.) The Court, in an Order dated January 6, 2012, granted the motion to amend (doc. no. 17), and Plaintiff then filed his amended complaint on January 23, 2012.[2] On March 27, 2012, the Court allowed Plaintiff to proceed with a § 1983 claim against Defendants Young, Mayo, and Brown based on allegations that they retaliated against him for exercising his right to free speech in violation of the First Amendment,[3] and vacated the November 18, 2012 R&R. (Doc. no. 26.)

In his amended complaint, Plaintiff alleges that he was transferred from GDCP's "S.M.U. Highmax lockdown" to ASMP's "S.L.U. Highmax Lockdown Program" on March 29, 2011, which he alleges was inappropriate because the program is for "seriously mentally

---

[2]Plaintiff submitted three copies of his amended complaint, each of which was filed as a separate entry on the docket. (Doc. nos. 19, 20, 23.) Plaintiff appears to have provided the latter two copies for the purpose of effecting service of process; whatever the intended purpose of these additional copies, the Court notes that Plaintiff has filed a single version of his amended complaint three times, not three distinct complaints. For ease of reference, the Court will refer to the first of these amended complaints (doc. no. 19) as the operative pleading in this case.

[3]Upon screening Plaintiff's amended complaint, the Court, on March 27, 2012, additionally recommended dismissal of Defendant Wilkes, as well as dismissal of Plaintiff's remaining claims regarding improper placement in ASMP's "S.L.U. Highmax Program," unwanted medical care, mishandling of grievances, and general conditions of confinement. (Doc. no. 24.) The Honorable J. Randal Hall, United States District Judge, adopted that recommendation as the opinion of the District Court on April 23, 2012. (Doc. no. 28.)

2

ill inmates" and he is not mentally ill. (Doc. no. 19, p. 2.) According to Plaintiff, in May of 2011, he and two other inmates were approached by an "out of state psychiatrist" visiting ASMP. (Id. at 3-4.) Plaintiff asserts that he and his companions complained to the psychiatrist that ASMP's "S.L.U. Highmax Lockdown Program" violated their rights and caused them to live in "awful conditions of confinement," and that Defendants Young (Mental Health Director at ASMP), Mayo (Mental Health Unit Manager at ASMP), and Brown (Warden at ASMP) failed to address these issues. (Id. at 2, 4.)

Plaintiff avers that a week later, Defendant Young approached him and other inmates, inquiring about who had complained to the visiting psychiatrist and telling them that she would find out the identities of those responsible. (Id. at 4.) According to Plaintiff, on June 16, 2011, Defendants Young, Mayo, and Brown caused him and the other inmates who had complained to the visiting psychiatrist to be transferred back to GDCP's "S.M.U. Highmax Lockdown."[4] (Id.) Plaintiff further avers that he and the other inmates had to spend 30 days in solitary confinement, where they were disallowed access to their personal property along with their phone and commissary privileges. (Id.) Plaintiff alleges that he and the other inmates "were transferred back to S.M.U. Highmax Lockdown to punish [them] . . . for telling the truth about the S.L.U. Program's problems to the out of state visitor (the psychiatrist) and that [Defendants] did not want to fix anything." (Id.)

## II. DISCUSSION

Defendants now seek to dismiss Plaintiff's complaint. (Doc. nos. 37, 40.) In support

---

[4]Defendants Brown and Mayo have provided the "Movement History of Bobby Minor" to clarify that Plaintiff was transferred from ASMP to GDCP on June 16, 2011. (See doc. no. 58, p. 4 n.1 (citing doc. no. 40-4, p. 2)).

3

of her motion to dismiss, Defendant Young argues that Plaintiff failed to exhaust his administrative remedies, and also that the claims against her should be dismissed for failure to state a claim. (See generally doc. no. 37.) In support of their motion to dismiss, Defendants Brown and Mayo argue that Plaintiff failed to exhaust his administrative remedies. (See doc. no. 40.) Defendants Brown and Mayo also argue that Plaintiff's claims against them should be dismissed for failure to state a claim and that they are entitled to qualified immunity. (See id.) Finally, Defendants Brown and Mayo argue that Plaintiff's claims for money damages should be dismissed for failure to allege a physical injury. (See id.) In his responses, Plaintiff argues that he did not exhaust his administrative remedies because "none was available by his knowledge of the state-wide grievance procedure," (doc. no. 48, p. 3; doc. no. 51, p. 3), and because he was not specifically informed he could file a grievance for his alleged retaliatory transfer (doc. no. 62, pp. 1-2). Plaintiff further argues that he should be excused from the exhaustion requirement because administrative remedies are no longer available to him, as any grievances would now be out of time. (Id. at 2.)

As explained below, the Court concludes that Defendants have the better argument on the issue of exhaustion; therefore, the Court finds that it is unnecessary to reach the other arguments in Defendants' motions to dismiss.

A. **Legal Standard for Exhaustion of Administrative Remedies**

Where a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, as Defendants have here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is

4

> entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> . . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir.) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

### B. Plaintiff's Failure to Exhaust Administrative Remedies

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). If an administrative remedy is "available," it must be exhausted to satisfy § 1997e(a). See id. at 1326 (explaining that

5

under PLRA, courts are "to focus solely on whether an administrative remedy program is 'available'"). Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159. Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 F. App'x 918, 920 (11th Cir. 2006) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (*per curiam*) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies."). Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).[5]

---

[5]Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001), *overruled in part on other*

C.  The Administrative Grievance Process

As Defendants correctly observe, the administrative grievance procedure applicable in this case is governed by the Georgia Department of Corrections' ("GDOC") Standard Operating Procedure ("SOP") IIB05-0001. (Doc. no. 37-1, p. 5; doc. no. 40, Ex. 1, p. 3 & Attach. A.) Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. §§ VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within 10 calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. §§ VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has 5 business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has

---

grounds by Porter, 534 U.S. at 532; Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

ninety (90) calendar days after receipt of the grievance appeal to respond. Id. §§ VI(D)(2), (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

With respect to what may be grieved, the "Grievable Issues" section of the SOP reads in relevant part, "Any condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections, other than those listed above, may be grieved." Id. § VI(A)(5). There is also a list of "[n]on-grievable issues," which includes "[t]ransfers of inmates between institutions," but also provides, "Notwithstanding the above [non-grievable issues], any grievance alleging retaliation, misconduct or harassment is grievable regardless of the form." Id. § VI(A)(4).

Here, Defendants have shown that Plaintiff's claims against them should be dismissed without prejudice because of his failure to satisfy the exhaustion requirement of § 1997(e). In support of her motion to dismiss, Defendant Young has produced a copy of Plaintiff's grievance history, certified by Terri Bussey, Acting Deputy Warden of Care and Treatment at Augusta State Medical Prison. (Doc. no. 37-1, pp. 18-21.) Similarly, in support of their motion to dismiss, Defendants Brown and Mayo have produced the affidavit of Victoria Malone, the Deputy Warden of Care and Treatment at GDCP, as well as a record of Plaintiff's grievance history during his incarceration at both ASMP and GDCP. (Doc. no. 40, Ex. 1 (hereinafter "Malone Aff.") & Attach. C.) These documents establish that Plaintiff filed seven grievances while incarcerated at ASMP, and he then filed his first grievance at GDCP on July 27, 2011. (Doc. 37-1, p. 19; Malone Aff., ¶¶ 19-21; doc. no. 40, Attach. B.) None of Plaintiff's grievances at ASMP concern the allegations in his complaint, the retaliatory transfer on June 16, 2011. (See doc. no. 37-1, p. 19; doc. no. 40, Attach. B.) Defendants Brown and

Mayo also show that in his July 27, 2011 grievance at GDCP, Plaintiff complained that he was not timely receiving his mail. (Malone Aff., ¶ 21.) Accordingly, Plaintiff did not exhaust his administrative remedies with respect to his retaliation claim.

In his responses to the instant motions to dismiss, Plaintiff concedes that he did not exhaust his administrative remedies, but argues that none was available to him because he did not know he could file a grievance about an issue that happened at a different facility. (Doc. no. 48, p. 3; doc. no. 51, p. 3; doc. no. 62, pp. 1-2.) In the Eleventh Circuit, an administrative remedy is not available "if 'an inmate does not know about, and cannot discover through reasonable effort . . . remedies or requirements for remedies . . . by the time they are needed." Williams v. Marshall, 319 F. App'x 764, 768 (11th Cir. 2008) (*per curiam*) (quoting Goebert v. Lee County, 510 F.3d 1312, 1322 (11th Cir. 2007)). Put another way, an administrative remedy which is "unknown and unknowable is unavailable; it is not 'capable of use for the accomplishment of a purpose.'" Goebert, 510 F. 3d at 1323 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

Thus, in Goebert, the Eleventh Circuit Court of Appeals held that a prisoner was not required to appeal a jail official's response to her complaint in order to exhaust administrative remedies, as the appeal process was only discussed in a manual that inmates were not permitted to see, and the appeal process was not discussed in the handbook given to inmates. Id. at 1322. The Court expressed concern that prison officials were playing "hide-and-seek" and suggesting that an administrative remedy was available solely because it was capable of being used, but no prisoner was ever told about it even if she inquired. Id. at 1323. In Williams, where the Eleventh Circuit remanded to the district court because the

9

availability of appeal was "not clear," the procedure it described was ambiguous: there was a handbook that referred to a "Policy Directive E-401" which was not included in the handbook, and the grievance form itself said nothing about whether the inmate could or should appeal the result, those details again being in the "Policy Directive." 319 F. App'x at 767-68.

Courts applying the framework from Goebert and Williams have similarly found the grievance process or parts of it to be unavailable where necessary information is not provided to prisoners or the information which is provided is ambiguous as to what is required. Compare Burkett v. Marshall, CV 107-080, doc. no. 43, pp. 11-12, *adopted by* doc. no. 46, 2009 WL 454133, at *6 (S.D. Ga. Feb. 23, 2009) (exhaustion was unclear where inmate failed to appeal because inmate handbook referred to "Policy Number: E-401," which was not contained in the handbook and which prison officials did not say was provided to inmates at all) and Campbell v. Johnson, 3:05CV113/EMT, 2008 WL 222691, at *7 (N.D. Fla. Jan. 25, 2008) (appeal not required to exhaust where steps in grievance process were described in optional terms, no handbook or written guidelines were provided to inmates, and there was no evidence that jail officials told inmates they had to appeal) with Horn v. Wallace, 3:06CV108/LAC/EMT, 2009 WL 347776, at *9 (N.D. Fla. Feb. 11, 2009) (prisoner could not claim grievance process was unavailable where he had used it before, language clearly indicated that it was mandatory, and the policy provided a specific time period for prison officials to respond).

In the instant case, Plaintiff first alleges, "By its structure and language, you cannot file a grievance at a[n] institution where the issue did not occur[.]" (Doc. no. 48, p. 3; doc.

10

no. 51, p. 3.) Plaintiff then cites to the "Grievable Issues" section of the SOP in support, which reads in relevant part, "Any condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections, other than those listed above, may be grieved." (Id. (quoting SOP § VI(A)(5).) Plaintiff somewhat confusingly argues that, "from that language, it indicates 'what' can be grieved and 'where' it can be grieved, 'any' . . . 'thereof' may be grieved." (Id.) From this provision, Plaintiff concludes that, because the retaliatory action allegedly occurred at ASMP and he was transferred to GDCP, he could not file a grievance about it at GDCP. (Id.) Furthermore, according to Plaintiff, when the grievance procedure was explained to prisoners during orientation at both ASMP and GDCP, "an interpretation was un-explained as to if you can file grievance(s) of issues that happen[e]d at another institution." (Doc. no. 48, p. 4; doc. no. 51, p. 3.) Plaintiff then adds, "but the language clearly identifies," apparently reiterating his contention that the language of the SOP prohibits filing grievances about issues that occurred at other facilities.[6]

Defendants, however, argue that the SOP clearly contemplates the filing of grievances involving issues at a different facility.[7] In support, Defendants cite to § VI(A)(4), which lists "transfers" as one of several "non-grievable issues," but also provides that "[n]otwithstanding the above [non-grievable issues], any grievance alleging retaliation . . . is grievable regardless

---

[6] Plaintiff similarly argues in his response to Defendants Brown and Mayo's motion to dismiss that the affidavit in support of their motion "does not give a specific interpretation of the grievance venue, in other words, whether a grievance can be filed at an institution where the issue/incident did not happen, [but] the plain language does though accurately." (Doc. no. 51, p. 3.)

[7] In her reply brief, Defendant Young, representing that she had the consent of Defendants Brown and Mayo to do so, incorporated the arguments in Defendants Brown and Mayo's "Reply in Support of Motion to Dismiss Amended Complaint" (doc. no. 58). (Doc. no. 59, p. 2.)

11

of the form." (Doc. no. 58, p. 3 (quoting Malone Aff. ¶ 6 (quoting SOP § VI(A)(4))).) Accordingly, the clear language of the SOP provides that an inmate may file a grievance alleging that a transfer was retaliatory, and an inmate may thus file a grievance regarding an action that occurred at a different facility.[8]

In response to Defendants' assertion, Plaintiff argues in his sur-reply that the sections of the SOP he knew of, including section VI(A)(4), did not "adequately give[] notice," that orientation counselors at ASMP and GDCP explaining the process gave no notice, and that "[t]here are no specific guidelines that instruct[] counselors to give inmates notice" that grievances can be filed about events that occurred at other GDOC facilities. (Doc. no. 62, p. 2.) In short, Plaintiff is contending that he should not have been required to file a grievance in order to have exhausted his administrative remedies because no one affirmatively and explicitly told him that he could.

Goebert and Williams do not stand for the proposition, however, that a prisoner who does not know of the grievance process is excused from utilizing it because no one affirmatively explained it to him. Rather, those cases indicate that the process must be

---

[8]In further support of their argument that the SOP clearly contemplates that grievances can be filed involving matters that occurred at a different facility, Defendants cite to SOP § VI(F)(5) (doc. no. 58, p. 3), which provides, "Where a grievance is filed *in reference to a different facility*, the three digit prefix for the named facility will be entered into IMGS in order to initiate the grievance and assign the grievance number. . . ," SOP § VI(F)(5) (emphasis added).
In his sur-reply, Plaintiff argues that the section referring to grievances filed in a different facility involves the "duties of the grievance coordinator," as opposed to the sections instructing inmates about how to use the grievance procedure. (Doc. no. 62, p. 1 (citing SOP §§ VI(A)(1-13), (B)(1-13), (C)(1-15), and (D)(1-3)).) Plaintiff claims that he "only had knowledge" of the sections that instruct inmates, or in other words that he did not know of the section making reference to grievances at other facilities. Still, Defendants have provided further proof that Plaintiff clearly could have filed a grievance about his retaliation issue.

12

unknown and unknowable by a prisoner who exercises reasonable effort. See Goebert, 510 F. 3d at 1322. Unlike in Goebert, where the grievance process was described in a manual that inmates were not allowed to see, see id. at 1322, Plaintiff admits that he knew of the sections of the SOP to which Defendants cite, which clearly provide that any grievance alleging retaliation, including a retaliatory transfer, is grievable. Furthermore, unlike in Williams and Burkett, the relevant sections of the SOP are self-contained: there is no reference to some other provision that is not included. See Williams, 319 F. App'x at 768; Burkett, 2009 WL 454133, at *6. Plaintiff here is not contending that anyone told him he could not file a grievance, nor is there any indication that prison officials played "hide-and-seek" with information about the grievance process, Goebert, 510 F. 3d at 1323. Plaintiff cannot validly argue that the grievance process was unknowable because he assumed he could not use it and no one corrected his assumption. Given the clear language of the SOP, Plaintiff has simply not alleged that the grievance process was unavailable. Goebert, 510 F. 3d at 1323.

Plaintiff next argues that even if he could have filed a grievance about the alleged retaliation, administrative remedies are no longer available to him because he is now out of the time frame for filing a grievance. (Doc. no. 62, p. 2.) Unless the grievance process was initially unavailable, however, a prisoner is not excused from exhausting solely because he failed to utilize it in a timely manner. See Goebert, 510 F.3d at 1324 (where administrative remedy was shown to be unavailable because prisoner could not have learned about it, prisoner was not required to utilize it when she later learned of it after filing her lawsuit). The Court also notes that the timeliness requirement for filing grievances may be waived for good cause. See SOP §§ VI(C)(2) & (D)(2). As Plaintiff has not alleged that he attempted

to file an out-of-time grievance, he "cannot be considered to have exhausted his administrative remedies." Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (*per curiam*). Moreover, exhaustion of administrative remedies has a procedural default component, meaning that a prisoner's failure to comply with the requirements of the administrative process does not excuse his failure to exhaust. See Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006).

Plaintiff finally contends that "[a]n unavailable administrative exhaustion is the state[']s fault." (Doc. no. 62, p. 2.) As Plaintiff has failed to allege that the grievance process was actually unavailable to him, however, his failure to utilize it constitutes a failure to exhaust his administrative remedies. Accordingly, Defendants' motions to dismiss should be **GRANTED**, and Plaintiff's retaliation claim against Defendants – which is the only claim with which he has been allowed to proceed in this case – should be dismissed without prejudice for failure to comply with the exhaustion requirement of §1997e(a).

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motions to dismiss (doc. nos. 37, 40) be **GRANTED**, that Plaintiff's complaint be **DISMISSED** without prejudice, and that the case be **CLOSED**.

SO REPORTED and RECOMMENDED this 16th day of October, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE